Committee C-15, Mr. Poseidon, and Mr. Griffin. Morning. Good morning. If it pleases the court, my name is Kenneth Tableman. I'm here on behalf of Mr. James Baker, who's the appellant. I'd like to reserve four minutes for rebuttal, please. OK. You may proceed. In this case, Mr. Baker is asking this court to reverse his convictions and remain the case for further proceedings in the district court. This morning, in argument, I thought I would address two of the arguments in the briefs on behalf of Mr. Baker, starting with the violation of the Speed Trial Act, and then, if time permits, discussing the district court's denial of his request to reopen the suppression hearing. So the two are the suppression motion and the Speedy Trial Act. Yes. There's a lot to this case, which is I understand. I appreciate you're narrowing it. I just want to make sure how you narrowed it. That's how I wanted to do it this morning. And I'm narrowing the Speedy Trial argument as the court will seek my brief. It's strictly a statutory challenge. I'm not, we didn't raise the constitutional Speedy Trial argument. So I think, in this case, there's an interesting tension that occurred in terms of the operation of the Speedy Trial Act because the defendant filed a motion to suppress, which came on for an evidentiary hearing and then was submitted to a magistrate judge for report and recommendation and lingered for nearly six months without any decision. And, of course, as I read the act, once a matter, a motion is submitted to a court for decision, there's a 30-day statutory limit. So while this time is going along, a couple of times Mr. Baker filed motions for continuance and said, I need time to prepare. And, by the way, there's a motion to suppress pending decision. The last couple of times, in July and August, there are, in the Western District of Tennessee, what are called report dates initiated by the court where the parties appear. And the court asks the parties what's happening with the case and was told, well, this motion to suppress is pending decision. We'd like a decision. And then the court issued what I consider to be essentially rote findings that the ends of justice outweigh the dispute trial considerations. And I think that in this type of a setting, it's not appropriate to use a sort of garden variety ends of justice continuance to override the court's duty, statutory duty, to decide a matter within 30 days. So Mr. Baker requested something like 14 continuances? Many continuances, many continuances. And certainly there's case law that says if you ask for a continuance, you're stuck with it. You can't complain about it later. It's sort of like sandbaking. But the dispute trial act statutorily is not a right, or this right to dispute trial is not a right that's solely in the control of the defendant. There's a public interest right there. And in the Zedner case, the Supreme Court said you can't, you the defendant, could make a waiver prospectively of your rights in the dispute trial act. We're not going to enforce it because there's a greater purpose than that. And there are many cases that talk about, well, the defendant makes a motion for speedy continuance under ends of justice, and the government concurs. The court still has a duty to consider the motion and determine independently on its own authority whether, in fact, the delay is warranted and whether it truly does comply with the purposes of the statute. Didn't the court give a reason each time for why it was granting a continuance? It may not have been a long, very detailed reason, but it said time to prepare for trial and things of that nature. Is there any indication that these reasons given by the court were just not sufficient? In my opinion, I can't really speak as to all the earlier motions and the ones after the report and recommendation was issued on the motion to suppress, but there's a couple of crucial ones that I've cited in my reply brief that are in the record, July and August. And it's very short. We're here. What's going on? We're waiting for the motion. And the court says, well, okay, we'll wait for the decision. I don't think that's... I mean, that's... In the setting of the dispute trial act, I argue that that's just not enough. Sure, every case... I mean, otherwise, if the court really says that that's adequate, then really this ends of justice exception swallows everything. I mean, the court does have an independent duty to process cases. And there are plenty of cases where very serious criminal charges have been dismissed, where there was a long delay, kind of not that anyone's at fault for the delay, but the case is just sitting because the court is busy and has other things to go on. I mean, I think it's a hard area because we do have lots of cases where it appears... I mean, I don't know how you reconcile them. They're hard to... In my mind, they're hard to reconcile. But I would say this. There has to be something that this court can look at and say, well, based on what was argued to the court or what the court said, that that's enough. And I believe it has to be more than just the defendant saying, I'd like a decision on the motion because that's not a statutorily... That's not the defendant's job. It's the court's, the magistrate judge or the district judge's job is to decide the motion within 30 days or give some reason why there's something unusually complicated about the motion that's taking more time. And this is a gun and drug case. It's not like it was a five-day hearing on the motion to suppress. It's several witnesses and some legal issues. There's no reason for it. Would you agree here that the court gave reasons, but just that the reasons were, in your view, to abbreviate it were not sufficiently detailed? Is that your basic argument? Yeah, I think I could go. I think... Well, I don't know if I'd go that far. I think the court acknowledged that we have to consider the speedy trial act here and we're going to set the case over. There's not much more that's really said. I mean, on the August report date hearing, the defense says, we're ready to go to trial, judge. We haven't had a decision, but we're ready to go to trial. And the judge, there's not really a real discussion about it. And the judge says, well, we'll just set it over. So on that particular one, the August one, I don't think it was, I don't think there were adequate reasons. Some of the other ones, perhaps. So the August one, you're saying the court just sort of gave a conclusion, did not give a reason at all. Right, right. And that that... And it is important, and I think, you know, I do think it's unpleasant to dismiss a criminal case because of an administrative delay that may be not the fault of any particular person, particularly where the defendant is not standing up every month and saying, you know, I want you to dismiss the case for delay. But really, how else can you enforce compliance with this act? I mean, that's really kind of the bottom line of it. And I think, you know, that Heath case, I thought, was pretty interesting because although the court there said everything was done correctly, it did say, you know, a defendant can't agree to a continuance where the continuance is based on an improper purpose. The judge wants to go fishing, therefore, we're going to make an ends of justice continuance. Well, that's not a proper reasoning if the defendant were to agree to it. It doesn't vindicate the interests of the act. And if a district court adopted that rationale, the appeals court would have to reverse it. But that's not the case here. Well, no. But I'm arguing that a motion to suppress has been pending for five months, so we're going to continue. I mean, it's not going fishing, but it's getting there. Sure. OK. So I've got a minute or two to turn to the motion to suppress issue. It's a, I'm picking a fight with the discretionary decision not to reopen the motion to suppress, and really with the district court's conclusions about witness credibility. So we have a late disclosed document that comes to light and indicates the officer says one thing at the suppression hearing. It said something totally different to another officer at another time that comes to the attention of the defense as part of the disclosures on the eve of trial. And they want to reopen the, Mr. Baker wanted to reopen the suppression hearing. I would argue that it's awfully difficult to make credibility determinations about a witness without having all the information about what the witness has said at different times. And that really, technically, that should have been reopened and gone back to the magistrate judge to say, in my opinion, having listened to the witness, this makes his testimony not believable or it doesn't affect my credibility determination. That's the gist of that particular argument. And that the rational given really doesn't support the exercise of discretion here. So I think that's all that I had to say at this point. I'm sure my colleague will have some matters for you to respond to. Thank you. Thank you, Mr. Tableman. Good morning, your honors. May it please the court, I am John Fabian from the United States Attorney's Office for the Western District of Tennessee on behalf of the United States of America. As to the first matter the appellant addressed, the speedy trial issue, the district court did not abuse its discretion, which is the applicable standard in continuing the trial under the ends of justice exception. And importantly, as was not addressed in the previous few minutes, was that the defendant, the appellant identified no prejudice resulting from the continuation of the trial. As your honors noted, this defendant requested 14 continuances prior to filing the speedy trial motion, which was probably not coincidentally filed just after the denial of his motion to suppress. Although it is correct that there was a suppression hearing in March of, I believe, that was 2010, and then post-trial briefing that was, I think, completed in April or early May. And there was a time that passed between that briefing and issuance of the magistrate's report and recommendation. The fact remains that throughout that period, the defendant continued to request continuances, including on the July 23 report date, he did express, and on that July 23 report date, the court excluded time through September 17, 2010. The magistrate's report and recommendation issued on September 13, which at that point began some other exclusions from the Speedy Trial Act calculation, allowed for response objections by the defendant, I believe were made on September 24, and the government's response was on October 2. And then the opinion issued November 2, all of which resulted in exclusions of time. So the entire duration of that period was excluded under the Speedy Trial Act. And the case law, there is a substantial case law that states that when a defendant requests a continuance or consents to a continuance, he can't then turn around and try to obtain a dismissal of the case based on that consent. There are a number of cases that use language that the defendant can't sandbag the court and then turn around. Or he cannot use the Speedy Trial Act as a sword and a shield, walling the court and the prosecution in a false sense of security, and then turning around, attempting to use the Speedy Trial Act to obtain dismissal of his case. Although the Speedy Trial Act is somewhat mechanical in its application, there's a certain math to it. You also have to, I believe it's appropriate to at least step back and look at the claim in the context of the case. Again, there are 14 requests for continuances prior to the Speedy Trial Act, then, I mean, yes, prior to the Speedy Trial Act claim. And then once that was resolved, the defendant continued right on requesting continuances for, I believe there were another six continuances after it was resolved. So it's quite clear that the use of the Speedy Trial Act here is not reflective of a genuine interest by the defendant in a Speedy Trial. Now, again, I'm not saying that's controlling, because the act has certain parameters which all weigh in favor of the government. But in the larger context, too, it's clear that the Speedy Trial Act was not desired by the defendant. And the second point I wanted to address, or an additional point I want to address, is the public interest. There are certain factors that are in the public's interest in a Speedy Trial is implicated by certain factors in terms of a need to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom. None of those public interests were implicated here. The defendant did not have pretrial freedom. The means of proving the charge remained intact during the duration. And a guilty verdict ensued. I'm sorry, I'm repeating my brief. But as I stated in the brief, for the defendant to obtain a dismissal on the basis of the public interest would produce a particularly perverse result here, because his conviction was clearly in the public interest, and he didn't want a Speedy Trial. And then finally, although it does not need to be addressed at length, the defendant has not pointed to any prejudice resulting from the continuances that he requested and the court granted. Other than he was kept in jail for a period of time, which he may have not been subjected to, had he gotten a Speedy Trial. That's correct. But he consented to remaining in jail, and he was not prejudiced in terms of his identified no prejudice. He has not alleged that as prejudice. And aside from that, he has not identified any prejudice with respect to defend the charges against him, in terms of a finding of guilt. Unless the courts want me to further address that issue, I'm going to now move on to the motion to suppress. And the question is, I think as the counsel for the appellant raised it, was the failure of the district court to reopen the motion to suppress. That's correct. That's absolutely correct, Your Honor. And the government's position and the standard is abuse of discretion. The government's position is the court did not abuse its discretion when it denied the motion to reopen, the motion to suppress. That was based on a statement by one of the arresting officers that he first saw the pistol in the defendant's pocket at what, five feet? And then there was a later report that said maybe 400 or 500 feet. That's correct. So? Well, that is correct. And there was no challenge to the fact that they saw several hand-to-hand cocaine transactions. There was no, well, I've chosen to look at this series of events in at least three separate stages. And those stages being, there's first a period of some initial observations, where there is, assuming that he did make the statement, and there's some doubt about that, but I'll assume he made, there was an inconsistent statement. There is where the inconsistency lies is in the context of these initial observations. There is then a stage when the officers are moving closer to the defendant, and they make additional observations, including removing a plastic baggie containing a white rock-like substance, presumed to be, and later confirmed to be, crack cocaine, and a firearm in his back pocket. This is at a much closer distance as he's walking in front of their car, five to eight feet, a very short distance. There's no dispute about that point in time. And of course, the third stage would be with the actual apprehension, the arrest. And there is no dispute in the record as to that moment in time. And the question, in terms of their motion to suppress, is was there probable cause to arrest? And the government's position is, yes, there was, based on the observation prior to arrest of the crack cocaine, in addition, the firearm in the back pocket. There was some lack of clarity, perhaps, in terms of who prepared the report. Am I correct about that, that Dean prepared the report, but it's unclear where he got the information. Did he get it from Rogers, and Reese, or in some other way? And apparently, Dean could not state with any conviction that he had gotten the information from those other two officers. So there was this lack of clarity. And I guess the question is, what difference does that make? Correct. On that issue, it was about as clear as mud. Apparently, there was a telephone conversation that Detective Dean had with someone he believed at the time to be Officer Reese, obviously, because that's what he wrote. Although it was later unclear. He wasn't certain whether it was Reese or Rogers. I'm not sure whether it was clear he was certain they were talking about that event or another of the events on their task force where they were observing people. Either way, there was some unclarity as to who was in the conversation, exactly what was said, and presumably about that event, but maybe not. But regardless, the question is, first of all, there's no dispute as to the crucial point in time, the pre-arrest observation. The question for this court is whether the district court abused its discretion in denying the motion to reopen. And then within the context of that analysis, whether the district court clearly erred in its credibility findings and in finding that the new information did not change its credibility findings, and therefore the denial of the motion to reopen. And then I'm about to wrap up. I will add as a final point, of course, the district court considered the matter again after the trial in a new trial motion. The appellant defendant asked the court to correct its error in denying the motion to reopen and reconsider its denial of the motion to reopen. And at this point, the district court had heard testimony from all the relevant parties, had an opportunity to evaluate their credibility. It had observed the relevant documents. It had received post-trial briefing on the issue. In May of 2012, it had heard post-trial argument on the issue. And it, again, reached the same finding and found that none of that information would have influenced its decision as to the outcome of the motion to suppress. That's the same judge? Different judge? It was a different judge, Your Honor. Judge Mays, at that time, the Western District of Tennessee had a rotation docket, where the first two weeks of each month were when trials were held. And there were certain judges that would sit on the rotation docket, depending on their schedules, and so on and so forth. So it was not uncommon for a new judge to handle the case at trial separate from the judge who  Judge Mays had the case up to trial. And issued the initial order denying the motion to reopen. And then Judge Anderson heard the trial, heard from all of the additional information, and agreed with Judge Mays. And unless the court has any further questions, I'll conclude. Thank you, Mr. Fabian. Thank you, Your Honors. Tableman, you have some rebuttal time. On the Speedy Trial Act issue, I think it's pretty well settled that it's not the defendant's responsibility to bring himself to trial. That's beyond his responsibility. And I cited the Moss case with regard to my standard review. But when I was preparing for oral argument, I went back and looked it up again. And that's not a case really on all fours with our case, but there's some similarities. It was a motion to suppress that was not acted on for 10 months. And the defendant didn't object to it up to a point. And then this court actually ended up ordering dismissal with prejudice because of that type of a delay. And I think that's because there is a bigger interest. The defendant does, there is prejudicial to a defendant to have a case pending for a long period of time. But as the Zedner case said, there's a broader interest in the Speedy Trial Act than just the interest of the defendant. There is a public interest in the administration of justice and the appearance of the administration of justice being done properly. So if a defendant asks for a continuance, doesn't that defendant's right to a speedy trial, just whatever reason the defendant gives, doesn't that, you know, I'm a district judge. If the defendant says, I need a continuance, I know that if I deny it, the defendant's going to bring a $2,255 just against his counsel for failing to get a continuance. Well, I agree with your honor. And not prepared. I believe my counsel had to go to trial. He wasn't prepared. Doesn't that outweigh the public's interest? I think that's a, I think. Let me put it this way. I think the defendant's wishes in the matter are something the district court can take into consideration. I'm just arguing that they don't really control. And I don't think they can control when it's about a matter that's within the control of the court, the decision on a motion to suppress. So if the defendant asks for it, the. Right. I understand what the court is saying. But I think. It would have been helpful if the defendant had said, Judge, I'd like to go to trial. But I can't go to trial unless I get a ruling on this motion to suppress. If that, I mean, that would have been. That would have pumped Judge Mays or a magistrate judge or whoever into doing something. Well, don't you think that's really what was happening here? We're here to report a date. Why aren't we going to trial? We're waiting on a decision or motion to suppress, Judge. Well, Judge, you know, why don't you just dismiss this? Because they're not making us go to trial. Well, he could have done that. But I'm arguing that the court has an independent obligation in every case, every time a defendant. Well, but the defendant says, I need a continuance. He would like to have his motion to suppress decided, so he knows what's happening in his case. I understand that. So. They can't prepare, though, until it is. But Judge, they've not done it. And why don't you dismiss this case? I guess I'm arguing that the district court, in that circumstance, where there's been a statutory violation in a routine gun and drug case, is not bound by what the defendant says and has an independent duty. Otherwise, how are we going to enforce these statutory rights that redound not only to the benefit of the defendant, but to the public at large? Down in Memphis, they used to, before they built flood walls and things, they used to fill sandbags, didn't they? To keep the Mississippi from coming into town. That's true, Your Honor. OK, I see my time is up. Thank you, Mr. Tableman and Mr. Fabian, for your arguments today. And Mr. Tableman, I note that you are serving today pursuant to the Criminal Justice Act. And for that, we thank you. It's a real service to the system at large, certainly a service to Mr. Baker. And I think you've done a fine job today representing both interests. So we'd like to thank you. And Mr. Fabian, of course, thank you for your very strong representation of the government's interest. With that, the case will be submitted.